(63 Misc. Rep. 389.)

PATTERSON v. VIVIAN et al.

(Supreme Court, Special Term, New York County.   June 1, 1909.   Supplemental Opinion, June 10, 1909.)

1. TRUSTS (§ 125*)—CONSTRUCTION.
    Under a judgment allowing the widow to sell her life estate in the homestead, and directing the executors and trustees of the residuary estate to "invest, reinvest, and keep invested the proceeds of such sale in the same kind of securities as they have been directed by testator in his will to make for the investment of his estate," and pay the income to the widow, the trustees hold the proceeds from such sale under the provisions of the will.
    [Ed. Note.—For other cases, see Trusts, Dec. Dig. § 125.*]

2. TRUSTS (§ 274*)—CONSTRUCTION—RIGHTS OF BENEFICIARIES.
    Though the use of the homestead was given to testator's widow for life free from the expenses of taxes, repairs, and insurance, which the trustees under the will were directed to pay from the income of the residuary estate held in trust, on a sale of the homestead and investment of the proceeds for the widow by the trustees, the income from the investment is chargeable with its proportion of the entire personal property tax assessed against the trust estate.
    [Ed. Note.—For other cases, see Trusts, Dec. Dig. § 274.*]

3. TRUSTS (§ 272*)—CAPITAL AND INCOME—INCREASE IN VALUE OF PROPERTY.
    Testator directed certain annuities to be paid from the net income of his estate left in trust, and provided that if such income should be less than the annuities they should be diminished, and if it be more they should be increased in proportion.   Some of the trust property was unproductive realty, and the time it should be sold was left to the discretion of the trustees.   They held it for a long period paying taxes from the income of the estate.   Held that, on a sale of such realty, after it had greatly increased in value, the life beneficiaries were not entitled to have the amount of the increase in value distributed to them.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 383–385; Dec. Dig. § 272.*]

4. COURTS (§ 90*)—RULES OF DECISION—PREVIOUS DECISION AS CONTROLLING.
    The Supreme Court at Special Term is bound by a previous decision of the same court at Special Term.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 313–321, 351; Dec. Dig. § 90.*]

Judicial accounting by John F. Patterson, as trustee under the will of Marshall O. Roberts, deceased, wherein Susan L. Vivian and others file objections to the report of the referee.   Heard on motion to confirm report.   Report modified and approved.

Thompson, Vanderpoel & Freedman, for plaintiff.
Bacon & Crane (Selden Bacon, of counsel), for defendant Vivian.
Duer, Strong & Whitehead (George A. Strong, of counsel), for defendants Mary M. Roberts and Evelyn Van Wart.
Opdyke, Ladd & Bristow, for defendant Marshall O. Roberts.

GIEGERICH, J.  This is an accounting by the trustees under the will of Marshall O. Roberts, deceased.   The questions raised by the objections of the various beneficiaries to the accounts were referred to a referee to hear and determine the same and to state the accounts,

subject to confirmation by the court. All the beneficiaries have filed exceptions to the referee's report. The plaintiff, who has no interest in the controversies between the beneficiaries, moves to confirm the report; no question being raised as to the correctness of the account with regard to the amount of the receipts, and the only questions as to the amount or propriety of the disbursements having been decided in his favor. Marshall O. Roberts died, a resident of the county of New York, in the year 1880, leaving a considerable estate in both real and personal property. The plaintiff and the defendant Vivian are the surviving trustees under his will. The plaintiff filed his account with the referee, but the defendant Vivian refused to sign it. She has, however, adopted the account so filed except in those particulars as to which she has filed objections. The general scheme of the testator's will, aside from pecuniary legacies, was: (1) To give his widow the use of the family residence and its contents for her life, taxes, repairs, and insurance thereon to be paid out of the general estate, and to provide for her in addition a net annual income of $40,000 during her life; and (2) to give the residue of the estate to the trustees to hold during the lives of the widow and a daughter, the defendant Mary M. Roberts, and out of the net income to pay certain annuities to beneficiaries named during their lives or until the termination of the trust, with the further provision that such annuities were to be increased or diminished ratably according as the net income exceeded or fell short of the amount necessary to pay them. Upon the termination of the trust the residuary estate was disposed of absolutely. In 1892 the defendant Vivian, who is the widow of the testator, remarried, and has since resided in England. The family residence and its contents thus ceased to be used by her, and several friendly actions were thereupon brought to procure a construction of the will and judgments directing the sale of the house and its contents. The actions went to judgment and the sales were made; the real property realizing $500,000 and the personal property $57,704.77. The $500,000 was paid to the trustees and was by them invested in a mortgage on real property, and the interest on the mortgage has since been paid over to the defendant Vivian without deduction of any kind. Of the $57,704.77 realized from the sale of the personal property and also received by the trustees, $55,000 was invested in a mortgage upon certain premises on West End avenue, and the balance was deposited by them in a trust company. All interest received on this mortgage was paid over to the defendant Vivian in full, and so also was the interest on the deposit in the trust company up to December 1, 1900, since which time interest amounting to $460.64 has accumulated and remains on deposit. The mortgagor defaulted in payment of interest on the last-named mortgage, and the mortgage was foreclosed and the property bid in by the trustees in April, 1900, for $50,000. There was then due upon the mortgage the principal sum of $55,000 and interest amounting to $3,940.65. Taxes, costs, and expenses amounting to $2,358.52 were paid out of the proceeds of the sale. The deficiency judgment proved worthless, and the property is still held by the trustees and has increased in value so as to be worth at least $62,500. The

cost of carrying the premises has exceeded the rents received and the excess has been paid out of the principal of the residuary estate.

Several questions are raised concerning these funds produced by the sale of the testator's residence and its contents and now represented by the $500,000 mortgage and the West End avenue property respectively. For convenience, the former fund has been designated the "homestead fund" and the latter the "personal property fund." The learned referee has found that the income of the "homestead fund" is chargeable with its proportion of the entire personal property tax assessed against the trustees of the estate and paid by them since the creation of this fund. The defendant Vivian claims that as under the will she was entitled to the use of the residence for life free of any expense for taxes, insurance, and repairs, which were to be paid by the executors out of the residuary estate, the mortgage into which that property has been converted ought to be held for her benefit on the same terms, assuming it to be held by the trustees as part of the estate of Marshall O. Roberts, which, however, she disputes. On the other hand, if not so held, she claims it cannot be assumed to have been included in the assessments made against the trustees of the estate. It will now be necessary to advert to various provisions of the will and of the judgments directing the sale of the homestead. The second paragraph of the will is as follows:

"Second. I give and devise to my beloved wife, Susan Lawrence Roberts, the use and enjoyment, for and during her life, of my two houses now known as numbers 105 and 107 Fifth avenue, in the city of New York, and now occupied by me as a family residence, with the stable and lots of ground used and occupied therewith on East Eighteenth street, in the rear of said houses. I also give and bequeath to my beloved wife, Susan Lawrence Roberts, for and during her life, all the household furniture, useful and ornamental, of every kind and description, books, pictures, gold plate and silver plate and jewelry that shall be in my houses aforesaid at the time of my decease; and also all my horses, carriages, harness, saddles, bridles, blankets and articles provided for use in the stables in the care of the horses, or with the horses and carriages."

The fifth paragraph is as follows:

"Fifth. I order and direct that my executors and executrix hereinafter named, the survivors and survivor of them, do, out of my said estate and out of the rents and profits thereof, keep the said premises numbers 105 and 107 Fifth avenue and the stable premises in the rear thereof on East Eighteenth street, so given to my said wife for and during her life as aforesaid, in suitable and proper repair, and also keep the said houses and stables and pictures and other personal property therein insured in a proper and reasonable amount during the life of my said wife, so that my said wife shall not be at any expense on account thereof. And I direct my said executrix and executors to pay all taxes and assessments which may be assessed upon or be chargeable upon the said real estate and upon the pictures and other personal property in the said houses and stables during the same time."

The seventh paragraph, as amended by the codicil, reads:

"Seventh. All the rest, residue and remainder of my estate, real and personal, of whatsoever name or nature and wheresoever situated, I give, devise and bequeath to my executrix and executors hereinafter named, the survivors and survivor of them, upon the uses and trusts and for the purposes following: To have and to hold the same for and during the life of my aforesaid wife and my daughter Mary M. Roberts, and of the survivor of them, and during the said lives or the life of the survivor to apply out of the net income thereof

the sum of twelve thousand dollars per annum to the use and benefit of my said daughter Mary M. Roberts for and during her natural life; and out of said net income to apply the further sum of twelve thousand dollars per annum to the use and benefit of my son Isaac K. Roberts for and during his natural life, or during the existence of the trust estate, whichever shall first terminate; and out of said net income to apply the sum of twelve thousand dollars per annum to the use and benefit of my daughter Caroline M. Van Wart for and during the term of her natural life or during the existence of the trust estate, whichever shall first terminate. And out of the said net income, on the arrival of my said child so born of my marriage with Susan Lawrence Roberts at the age of fifteen years, there shall, from and after that time, be applied to his use and benefit the sum of six thousand dollars per annum during his minority, or so much thereof as in the discretion of my trustees aforesaid may be necessary and proper, with power to accumulate the surplus during the minority of such child, which shall be changed and increased to the sum of twelve thousand dollars per annum on his arrival at the age of twenty-one years, and shall continue at this latter sum of twelve thousand dollars for and during the term of his natural life or during the existence of the trust estate, whichever shall first terminate."

The eighth paragraph, as amended by the codicil, is as follows:

"Eighth. In the event of the net income of my estate, after the payment of the taxes, assessments, repairs and insurance necessary and reasonable for the proper preservation, maintenance, management and protection of the estate, should not be sufficient to annually provide the said sums so given as annuities in and by the seventh clause of my will, as said seventh clause is amended by this codicil, for the use and benefit of each of my said four children respectively, then I direct and will that each annuity be reduced pro rata according to the amount of the respective annuities as provided to be paid at the time such deficiency in net income shall occur. If, however, said net income should exceed the sums per annum so directed to be applied to the use of my said children respectively as aforesaid, then I direct that such surplus be divided and applied: One-third to the use and benefit of my daughter Mary M. Roberts, one-third thereof to the use and benefit of my daughter Caroline M. Van Wart and my granddaughter Evelyn Van Wart, to be equally divided between them, and one-third thereof to the use and benefit of my said child so born of my marriage with Susan Lawrence Roberts. In the event of the death of either my said daughter Caroline M. Van Wart or my said granddaughter Evelyn Van Wart the share which would have been applied to the use and benefit of the one so dying shall be applied to the use and benefit of the survivor. In the event of the death of my said son, so born of my marriage with Susan Lawrence Roberts, during the existence of said trust estate, the share of such surplus of net income which would have been payable to my said son if he had lived and also the said sum which would have been payable for his use and benefit as annuity shall be divided, one-half to my daughter Mary M. Roberts and the other one-half to my daughter Caroline M. Van Wart and my granddaughter Evelyn Van Wart equally, or to the survivor of them."

The ninth paragraph reads:

"Ninth. Subject to the life estate of my said wife in said real estate and personal property mentioned in the second clause of this my will, I give, devise and bequeath the real estate and personal property mentioned in said second clause of this my will to my said executors and the survivor of them in trust, to have and to hold the same, during the life of my said daughter Mary M. Roberts, upon the same trusts as are mentioned and prescribed in all respects as to the property mentioned in the eighth clause of this my will; but it is my will and desire and direction that my said trustees or trustee who may then survive do sell and dispose of said personal property or such portion thereof as may be in their or his judgment properly sold and disposed of."

The eleventh paragraph reads:

"Eleventh. And, as to the property hereinbefore mentioned, I authorize and fully empower my executrix and my executors, the survivors and survivor of

them, as to any property over which they in that character and capacity are given the control and management, in the discharge of their duties as aforesaid, to sell and dispose of the same in their discretion at such time or times and at public or private sale and upon such terms and conditions as to them, the survivors and survivor of them, shall seem meet and proper, and to execute, acknowledge and deliver all proper writings or deeds of conveyance or transfers as may be requisite or expedient in the premises. And I do also authorize and empower my said trustees, the survivors and survivor of them, to invest and keep invested the personal property in such securities as I shall leave the same invested in, or upon bond and mortgage upon productive real estate in the city of New York, or in stock of the state of New York, or bonds of the United States government; and in case of the sale of any real estate, to invest the proceeds thereof in the same manner, to let or lease the said real estate or any part thereof, to sell or dispose of any or all of my real estate at such time or times as they, or the survivors or survivor of them, shall deem beneficial and advantageous to my estate and as may be necessary to carry out the provisions of this my will."

On March 9, 1899, a judgment was entered in an action in the Supreme Court, to which all the parties to the present action were parties directing the sale of the homestead, and providing, among other things, as follows:

"And it is further ordered, adjudged, and decreed that said executors and trustees shall invest, reinvest, and keep invested the proceeds of such sale in the same kind of securities as they have been directed by the testator in his will to make for the investment of his estate, and shall pay over the income of such investments to the defendant Susan L. Vivian for and during her life, and that upon her death the principal of such proceeds and investments shall be distributed according to the terms of the last will and testament of Marshall O. Roberts, deceased, to and among the persons entitled thereto."

On March 5, 1900, in a further action in the Supreme Court between the same parties, a judgment was entered which contained the following provisions:

"(3) That under the said will of the said Marshall O. Roberts, deceased, the title to all the real estate of the testator was vested in his executrix, executors, and trustees, and the said will gave a valid power of sale to the said executrix and executors and trustees, and to the survivors and survivor of them, to sell, dispose of, and convey the same or any part thereof; but said executrix, executors, and trustees took the premises mentioned in the second clause or subdivision of said will subject to the life estate created by the said second clause or subdivision in favor of the defendant Susan L. Vivian, and a sale or conveyance of said last-mentioned premises can be made by said surviving executrix and executors and trustees subject to said life estate. (4) That the said Susan L. Vivian has full power and authority to sell, convey, and dispose of her life interest in said premises. (5) That the plaintiff John F. Patterson and the defendant Susan L. Vivian, as executrix and executor, and as trustees under the last will and testament of Marshall O. Roberts, deceased, are authorized and empowered by the said will and codicil to sell the premises in the second clause or subdivision of said will and in the seventh paragraph or subdivision of said complaint mentioned and described, by and with the consent of the defendant Susan L. Vivian, and that the said will and codicil contain a valid power of sale thereof to them, and that the said Patterson and the defendant Vivian, as executor and executrix and trustees, together with the said defendant Vivian, individually, have power to convey the said property in fee simple absolute. · (6) That in the event of the sale and conveyance of the said last-mentioned premises by the executrix, executors, and trustees as aforesaid, and the conveyance of the life estate of the said Susan L. Vivian by her to the same purchaser, the proceeds of the same are to be held and invested in the manner prescribed in said will, and the net income thereof paid over to the said Susan L. Vivian during her lifetime, and upon the death of

said Susan L. Vivian and the termination of the trust created in said will the proceeds of such sales are to be distributed in the manner prescribed by said will, or, if the provisions of said will in respect thereto shall then have failed, then in such other manner as the law shall require."

It will thus be seen that under the will the widow, now Mrs. Vivian, took a life estate in the homestead, and the only estate given to the trustees therein was a remainder for the life of Mary M. Roberts. Mrs. Vivian, individually, joined with the trustees in the conveyance of the property in fee, and the purchaser paid $500,000 for the entire estate, which was made up of Mrs. Vivian's life estate, the trustees' estate in remainder for the life of Mary M. Roberts, and the remainder in fee over which the trustees had a power of sale. The trustees under the will never had the power to sell Mrs. Vivian's life estate and never did so. Under the judgments in the two actions mentioned, the proceeds of the whole estate nevertheless came into the hands of the then surviving trustees; but it is argued that the trustees took these proceeds, not as trustees under the will, since under the will they had no interest in the first estate for life, but as trustees specially designated by the court. This point has been decided adversely to such argument by the judgments mentioned, which, as I construe them, direct these trustees to hold the money in question as trustees under the will. The testator gave his widow an estate for her life in the homestead and directed that taxes and other charges upon that property should be paid out of the income of the residuary estate. The remainder after the life estate was given to the trustees during another life, and then the remainder in fee was disposed of. The trustees were given a power of sale over the remainders after the life estate of the widow, but not over her life estate. She alone could sell that, and it was she who did sell it. Having chosen to sell it together with the estates in remainder and to accept the income of the whole fund for her life in lieu of the provision made for her in the will, I do not know of any principle upon which she can claim that the fund so produced and newly invested ought to be exempted from taxation at the expense of the income of the residuary estate. I do not think that it is any longer protected by the provisions of the fifth paragraph of the will, nor do I think that the testator can be assumed to have contemplated such a situation as coming within the provisions of the eighth paragraph regarding the payment of taxes. In my judgment the conclusion of the learned referee on this point was correct.

The referee has further found that charges for taxes, insurance, and repairs upon the West End avenue houses should be charged against the income of the personal property fund and not against the income of the residuary estate. Here there is no doubt that the fund itself was taxed, but in all other respects the questions involved seem to be the same as those already discussed in connection with the homestead fund. The conclusions of the referee on this point should also be affirmed. The learned referee has, however, gone a step further, and has undertaken to determine the manner in which the proceeds of the sale of the West End avenue properties shall be divided between principal and income when they are sold. It will be time enough to determine this question when the sale has been made, and the findings

of the referee on this point are therefore disapproved. His findings numbered 21, 22, 52, 53, 54, 57, and 58 should therefore be stricken out of the report. The referee has also found that the trustees may determine in their discretion when and how the West End avenue properties shall be sold. No reason is apparent for such a finding at this time, and that matter may better be left to take care of itself; and, if circumstances shall at any time justify an application to the court to compel the sale, the parties ought to be free to make such application unembarrassed by any present adjudication on the point. Finding No. 55 should be stricken out.

One of the most important matters dealt with in the report relates to the disposition of the proceeds of the sale of certain lots of land situated on Columbus avenue, in this city. The testator died in 1880. Part of the residuary estate devised to the trustees under the will consisted of four unimproved lots of land on Columbus avenue. By the will the trustees were given a power of sale over this and the other real property included in the residuary devise, to be exercised in their discretion at such time or times, at public or private sale, and upon such terms and conditions as to them should seem meet and proper. In 1903 the trustees sold the four Columbus avenue lots for $200,000. At the time of the testator's death they were worth $22,500. During the intervening years taxes amounting to $24,345.07 had been paid out of the income of the residuary estate. It is now claimed by two of the life beneficiaries that some part of the increase in the value of these four lots which had been carried for upwards of 20 years at the expense of the income of the residuary estate should be credited to that income account and distributed to the life beneficiaries. The referee has so found and has made an apportionment, upon principles which it is not necessary to detail here, by which he gives $60,533.47 out of the $200,000 realized upon the sale of these lots to income and directs its distribution to the life beneficiaries. The testator dies leaving the residue of his estate, consisting in part of unproductive real property, to trustees, and directs that certain annuities be paid out of the net income of such residue, and that if such net income, after payment of taxes, assessments, etc., necessary for the proper preservation, maintenance, management, and protection of his estate, is less than the annuities given, they are to be diminished, and if it is more they are to be increased in proportion. The time when the real property shall be sold is left absolutely to the discretion of the trustees. They choose to hold it for a long period, and they pay the taxes from income as they are bound to do under the directions contained in the will. And now it is said that the life beneficiaries, who had no interest in the estate whatever until the taxes had first been paid, and then only an interest in the income left after their payment, have in some unexplained manner acquired the right to share in the proceeds of the sale of the lots and to divide the increase in their value with the remaindermen. The learned referee cites Matter of Marshall, 43 Misc. Rep. 238, 88 N. Y. Supp. 550, as an authority for the apportionment of this increase in value between the capital and the income of the trust estate. That case is broadly distinguishable from the

present one, however. There the trustees invested trust moneys in a mortgage upon unproductive property. The mortgage was afterwards foreclosed and the property bought in by the trustees and carried for many years at the expense of the principal of the trust fund. The property was finally sold for more than the amount of the mortgage and costs of foreclosure and all carrying charges, and it was held that the proceeds of the sale should be apportioned between the life beneficiaries and the remaindermen. A sufficient distinction between that case and this is that there the trustees invested in the mortgage, and later locked up in real estate cash on which the life beneficiaries were entitled to the income. Here the trustees made no investment, but merely continued to hold the property in the form in which it came to them and which the will gave them discretion to so hold, and there was no income used to which the life beneficiaries were entitled; their right being limited to net income, of which there was none until the charges for carrying the property in question had been paid. I think it is clear that the whole proceeds of the sale of these lots is capital of the trust estate, and that the beneficiaries for life of the net income are not entitled to any part of such proceeds. The time when the lands should be sold was left to the discretion of the trustees and their judgment, unless shown to be exercised in bad faith, was conclusive. Haight v. Brisbin, 96 N. Y. 132. The beneficiaries of the income will now share in the result which has been produced by the apparently wise judgment of the trustees. If they had thought that the trustees were abusing the discretion confided to them by the will, they were at liberty at any time during the 20 odd years which elapsed between the death of the testator and the sale of the property to apply to the court to enforce the exercise of the power of sale. Haight v. Brisbin, supra. This they did not choose to do, and they cannot now claim an interest in the corpus of the fund, for they have at no time had any such interest. The referee's findings Nos. 64 and 65 are therefore disapproved and findings Nos. 72 and 74 must be modified accordingly.

I think it is sufficiently shown that the action of the trustees in paying the personal taxes upon the assessments as made by the tax commissioners was in the best interest of the estate, and the referee's conclusion that their account ought not to be falsified to any extent on account of the nonresidence of one of the trustees is approved. So also is his conclusion that Mrs. Vivian is entitled to her commissions. While I think that the questions arising with respect to the item of $13,101.97 charged to the defendant Vivian, as set forth in the referee's sixty-third finding (being the homestead fund's proportionate share of the personal property tax upon the entire estate), were properly before him, and that he made a proper disposition of such questions upon the facts adduced, yet, as the case must be sent back to the referee, the said defendant should, as suggested in the brief submitted in her behalf, be permitted to introduce proof in respect thereto. The other parties in interest may introduce evidence in answer in case such proof is presented.

In all other respects the findings of the referee are approved, and the case is sent back to him to correct his report and state the accounts

in accordance with the views herein expressed, and to take further evidence upon the subject above mentioned.

### Supplemental Opinion.

What was said in the memorandum heretofore published with respect to the sale and the division of the proceeds of the West End avenue properties was said under a misapprehension as to the scope of the action. In the memorandum submitted on behalf of the defendants Mary M. Roberts and Evelyn Van Wart objection was made to the referee's findings with respect to such sale and division of proceeds on the ground that the referee had no power to make such a ruling, and that it was purely academic, in that it was impossible now to foresee the future course of events and what rights and equities might hereafter arise upon facts which as yet have no existence. My attention is now called, however, to a provision in the interlocutory decree which specifically includes the question of the proposed sale of this property and the distribution of the proceeds thereof among the matters to be passed upon. That direction of this court at Special Term must be observed by this court at Special Term. Considering the question of the distribution of such proceeds of sale as properly before the referee for distribution, consequently I can see no reason for differing with the results he has arrived at.

Order returning case to referee as settled signed.